UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 25-CR-80076-CANNON

UNITED STATES OF AMERICA

vs.

LATOYA CLARK,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM

COMES NOW, the Defendant, LATOYA CLARK, and in accordance with the decision in *United States v. Booker*, *543 U.S. 220 (2005)* and its progeny and 18 U.S.C. § 3553(a), files this Motion for Downward Variance and Sentencing Memorandum setting forth all of the factors and reasons this Court should consider before imposing a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

### OFFENSE CONDUCT

Ms. Clark was charged in a multi-count indictment arising out of alleged fraudulent applications for COVID-19 relief funds, including loans and grants under the Paycheck Protection Program (PPP), Economic Injury Disaster Loan (EIDL) program, Shuttered Venue Operators Grant (SVOG) program, and Restaurant Revitalization Fund (RRF). Following a jury trial, she was found guilty of eight counts, including conspiracy to commit wire fraud and conspiracy to commit money laundering, as well as several substantive money laundering counts. She was acquitted of 17 counts, those being Counts 3 through 20, which encompassed the substantive wire fraud charges relating to the submission and receipt of pandemic-related funds.

The government's theory at trial was that Ms. Clark participated in a broader scheme involving the submission of fraudulent applications and the laundering of resulting proceeds. However, the evidence demonstrated that other individuals, including co-conspirator Elaine Escoe, who became a fugitive from justice, exercised primary control over the creation of entities, submission of applications, and movement of funds. Ms. Clark did not hold a leadership role, nor a manager or supervisor role, and did not direct the activities of others. Furthermore, Ms. Clark did not exercise decision-making authority over the alleged scheme. Ms. Clark simply followed the misleading and deceptive directions of Ms. Escoe.

As reflected in her objections to the Presentence Investigation Report, [DE 217] Ms. Clark maintains that she did not knowingly participate in fraudulent conduct and believed that she was performing legitimate administrative or errand-based tasks at the direction of Ms. Escoe. Even though the jury found sufficient evidence to support the convictions, the record supports the conclusion that her role was limited, subordinate, and materially different from that of more culpable participants.

ADVISORY GUIDELINE RANGE

The Presentence Investigation Report calculates a total offense level of 31 and a Criminal History Category of I, resulting in an advisory guideline range of 108 to 135 months' imprisonment. This calculation is driven primarily by a 22-level enhancement based on an intended loss amount of approximately $32.9 million.

Ms. Clark has formally objected to this calculation on several grounds. *Id.*  First, the loss amount includes approximately $9 million associated with Counts 3 through 20—counts on which she was acquitted. The inclusion of this conduct materially inflates the guideline range and does not reflect the jury's verdict. Second, the calculation fails to account for Ms. Clark's

minimal role in the offense. The evidence demonstrates that she had no decision-making authority, no proprietary interest in any proceeds, and no control over the accounts or funds at issue. Her involvement was limited to performing tasks at the direction of others, without discretion or independent authority.

When these factors are properly considered, the applicable guideline range is significantly lower. As set forth in her objections,  a corrected offense level would be approximately 25, resulting in an advisory range of 57 to 71 months. Even that adjusted range, however, remains advisory, and the Court must ultimately determine a sentence that is sufficient, but not greater than necessary, in light of the factors set forth in § 3553(a).

<u>CONSIDERATION OF 18 U.S.C. § 3553(a) FACTORS</u>

The Court must consider all 3553(a) factors prior to making a decision, not just the fact that a crime was committed. *See Gall v. United States, 552 U.S. 38, 49-50 (2007)*. These include (1) the nature and the circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) To protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;  Additionally and most importantly the court needs to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The Eleventh Circuit has repeatedly affirmed below guideline sentences after Booker. *United States v. Clay, 483 F.3d 739 (11th Cir. 2007)* (affirming 60-month sentence even though guidelines were 188-235 months based on post-offense rehabilitation); *United States v. Gray, 453*

*F.3d 1323 (11th Cir. 2006)* (affirming 72 month sentence even though low end of guidelines were 151 months, more than double sentence imposed); *United States v. Williams, 435 F.3d 1350 (11th Cir. 2006)* (90 months' imprisonment was sufficient, but not greater than necessary to punish, deter, and rehabilitate defendant even though low end of guidelines was 188 months).

Ms. Clark, requests a sentence below the advisory guideline range. For the reasons set forth below, the guideline range in this case significantly overstates Ms. Clark's culpability and fails to account for the individualized factors that must guide the Court's sentencing determination. A downward variance is necessary to impose a sentence that is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.

<u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense must be evaluated in light of the full context in which Ms. Clark's conduct occurred. While the jury returned a guilty verdict, the evidence at trial established that Ms. Clark was not a mastermind, organizer, or primary beneficiary of the scheme. Rather, she was drawn into a broader operation orchestrated by others—most notably Elaine Escoe—who exercised control, direction, and influence over the financial activity at issue. While some accounts were in Ms. Clark's name, it was established during the trial that Ms. Escoe controlled those accounts. In fact, Ms. Clark never received the statements from these accounts, as Ms. Escoe got them and kept them from her.  Ms. Clark was lured into the scheme by Ms. Escoe, who was able to prey upon her desire to open her own restaurant. Ms. Escoe was made aware of Ms. Clark's talents as a cook and was constantly reassured that she would assist her in the opening of her own business. Ms. Clark did not possess the level of sophistication typically associated with large-scale fraud offenses like this case. Instead, the evidence demonstrated that she acted at the direction of Ms. Escoe, without a full appreciation of the scope or illegality of

the conduct, and without any meaningful personal gain to herself. Ms. Clark earned daily pay in the amount of only $200.

There was also no evidence that Ms. Clark engaged in repeated independent fraudulent acts, concealed proceeds for personal enrichment, or continued criminal conduct after becoming aware of potential wrongdoing. To the contrary, the record reflects a defendant who was susceptible to manipulation and whose involvement was limited in both duration and intent. When viewed through the lens of 18 U.S.C. § 3553(a), these circumstances significantly mitigate the seriousness of the offense and support a sentence below the advisory guideline range.

<u>History and Characteristics of the Defendant</u>

Ms. Clark's personal history is marked by extraordinary trauma and hardship. Her father was murdered when she was a child, an event that led to a suicide attempt at a young age. She experienced sexual trauma during childhood that went unaddressed, and as an adult, she endured severe domestic violence, including extreme physical and sexual abuse requiring hospitalization. See PSI ¶ 198 - 201, which details the past abuse she sustained, including physical violence, being thrown into walls, and being sexually assaulted, resulting in a traumatic vaginal laceration. As a result of Ms. Clark's incarceration right before trial commenced, her victimization was again revealed, showing her bald scalp, a direct result of her prior partner, David Valentine, abusing her and ripping the hair from her head, which never grew back. These experiences are directly relevant to her psychological condition and life circumstances.

Ms. Clark's history and characteristics further support a sentence below the advisory guideline range, particularly in light of the psychological issues identified during the comprehensive pretrial evaluation conducted by Dr. Rapa. [DE 129]. (Filed under seal on December 9, 2025) As detailed in that evaluation, Ms. Clark exhibits significant vulnerabilities

in judgment, susceptibility to external influence, and impaired decision-making traits that materially impacted her conduct in this case. Dr. Rapa's findings reflect that Ms. Clark was not operating with the level of independent, calculated intent typically associated with fraud offenses, but rather was functioning under psychological conditions that made her particularly prone to manipulation and undue influence by more dominant actors. Ms. Clark's intellectual functioning fell in the Low-Average to Borderline range, roughly around the 13th percentile. placing her cognitive performance higher than that of only about one in eight adults her age. These characteristics are not offered as an excuse, but as an explanation that places her conduct in proper context.

Importantly, Dr. Rapa's evaluation also underscores that Ms. Clark's psychological profile is amenable to treatment and rehabilitation, and that she does not present as an individual with entrenched criminal tendencies. Her conduct appears to be situational and tied to these underlying vulnerabilities, rather than indicative of a pattern of deliberate or predatory behavior. The Court should recognize that these mental and emotional conditions, particularly those that impair judgment and increase susceptibility to coercion, are highly relevant under 18 U.S.C. § 3553(a)(1). Here, those considerations strongly weigh in favor of a sentence focused on treatment, supervision, and rehabilitation rather than extended incarceration.

It should also be noted that Ms. Clark also suffers from documented mental health conditions, including major depressive disorder, anxiety, and related diagnoses. She has been prescribed multiple psychiatric medications and has struggled with consistent treatment. These conditions remain unresolved and require ongoing care.

Despite these challenges, the Court has received many character letters, [DE 259] demonstrating that Ms. Clark has consistently shown compassion, generosity, and support for

others. Individuals who have known her for decades describe her as someone who provides assistance to struggling families, contributes to her community, and remains deeply committed to her children. Her son's letter underscores the importance of her presence in his life and the significant impact her absence would have.

These characteristics are not recent or isolated. They reflect a longstanding pattern of conduct that is inconsistent with the notion that Ms. Clark is a committed or sophisticated financial offender.

<u>A Below-Guideline Sentence Will Still Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment</u>

A sentence below the advisory guideline range would still reflect the seriousness of the offense and provide just punishment. Ms. Clark has been convicted of federal offenses, has been incarcerated since December 2025, and faces significant collateral consequences, including restitution and immigration proceedings. [DE 209].

The guideline range is inflated by disputed loss calculations and an overstated assessment of her role, overstating her actual culpability.  A sentence within that range would result in punishment greater than necessary to achieve the statutory goals. The Eleventh Circuit has made clear that district courts must impose a sentence that is "sufficient, but not greater than necessary," and may vary from the Guidelines where the range fails to reflect the totality of the circumstances. *See United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). A sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect for the law. See *United States v. Stern*, 590 F. Supp. 2d 945, 956-957 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake.") In *United States v. William*s, 435 F.3d 1350 (11th Cir. 2006), which was previously cited above for affirming a below guideline sentence, the court found that an

188-month sentence was too long and did not promote respect for the law, justifying a 90-month departure as reasonable.

A Below Advisory Guideline Sentence Will Still Afford Adequate Deterrence

A below advisory guideline sentence in this case will more than adequately deter Ms. Clark from future misconduct. Ms. Clark's personal history, combined with her psychological vulnerabilities, as noted above, demonstrates that she is not an individual who is likely to reoffend once confronted with the consequences of her actions. The experience of investigation, prosecution, trial, and conviction—coupled with the public nature of these proceedings—has already had a profound and lasting impact on her. For a person with Ms. Clark's background and psychological profile, the stigma of these multiple federal convictions, the loss of reputation, and the emotional toll of these proceedings, including the incarceration she has endured thus far, serve as powerful deterrents that far exceed what is necessary to prevent future criminal conduct.

Moreover, the specific characteristics that contributed to Ms. Clark's involvement—namely, her susceptibility to influence and impaired judgment—are not traits that translate into a likelihood of repeated, independent criminal activity. Rather, they are factors that can be addressed through appropriate supervision and treatment. A sentence that includes meaningful conditions, such as mental health counseling and structured oversight, will directly target the root causes of her conduct and further reduce any risk of recidivism. Under these circumstances, a lengthy term of incarceration is not necessary to achieve the goal of deterrence.

A below advisory guideline sentence in this case will also satisfy the goal of general deterrence under 18 U.S.C. § 3553(a)(2)(B). The prosecution and conviction of Ms. Clark alone send a powerful message to others that participation—however limited—in federally regulated financial programs carries serious consequences. General deterrence does not require the

harshest possible sentence, but rather a sentence that reinforces respect for the law and demonstrates that misconduct will be detected and punished.

The Need to Avoid Unwarranted Sentencing Disparities

A guideline sentence in this case would create unwarranted disparities by treating Ms. Clark relatively the same as individuals who exercised leadership roles, personally controlled financial accounts, and profited significantly from fraudulent conduct. Because Ms. Clark was not an organizer/leader or primary decision maker within the conspiracy, nor a person who significantly profited from the fraud, Ms. Clark's role was very limited and subordinate. A downward variance would ensure that her sentence reflects her actual level of culpability and avoids disproportionate punishment.

<u>CONCLUSION</u>

When the § 3553(a) factors are considered in their totality, they support a sentence well below the advisory guideline range. The guideline calculation overstates Ms. Clark's culpability and fails to account for her minimal role, personal history, and mental health needs. Ms. Clark respectfully requests that the Court impose a sentence well below the guideline range, followed by a term of supervision focused on mental health treatment. Ms. Clark further requests that no fine be imposed due to her inability to pay and that the Court recommend to the Bureau of Prisons that she be designated to a facility as close to South Florida, particularly in a camp setting.

Respectfully submitted by,

JONATHAN S. FRIEDMAN, P.A.
ATTORNEY FOR LATOYA CLARK
101 N.E. 3RD AVE.
SUITE 1500
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE: (954) 713-2820
FACSIMILE: (754) 301-5109

/S/ Jonathan S. Friedman
JONATHAN S. FRIEDMAN, ESQ.
FLORIDA BAR NUMBER: 0973297

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 12, 2026, the foregoing sentencing memorandum was filed via CM/ECF and served on all other counsel of record.

/S/ Jonathan S. Friedman_____
JONATHAN S. FRIEDMAN, ESQ.
FLORIDA BAR NUMBER: 0973297